COUNTY COUNCIL FOR MONTGOMERY COUNTY
*v.* GENDLEMAN ET AL.

[No. 130, September Term, 1961.]

492

*Decided February 14, 1962.*

The cause was argued before ·BRUNE, C. J., and HENDER-SON, PRESCOTT, MARBURY and SYBERT, JJ.

*Joseph B. Blocher, Deputy County Attorney,* with whom was *Alfred H. Carter, County Attorney for Montgomery County,* on the brief, for appellant.

*Leonard T. Kardy,* with whom were *Kardy & Brannan,* and *John K. Gearing* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellees, the Gendlemans, applied to the County Council for Montgomery County, sitting as a District Council for that County, pursuant to Ch. 780 of the Acts of 1959, to re-zone certain property owned by the appellees from a residential classification, R-60, to the commercial office classification, C-O. The Council denied the application, the appellees took an appeal to the Circuit Court for Montgomery County, and that Court held that the action of the Council was "arbitrary, capricious, discriminatory and therefore illegal" and accordingly reversed the decision of the Council. The Council appeals.

The principal question is whether the Council's action in denying the petition for reclassification fell within the realm of the fairly debatable or was, as the Circuit Court held, arbitrary, capricious and discriminatory.

The property in question consists of Lots 1 and 2 and a part of Lot 3 of Block K of what is known as Battery Park Subdivision, Section 2, in Bethesda, and contains 21,533 square feet. It has been zoned as residential since the inception of zoning in Montgomery County in 1927 and has remained vacant throughout the entire period since that time. Since the adoption of a new zoning ordinance and zoning maps covering the entire Maryland-Washington District within Montgomery County, which became effective January 1, 1954, the Gendleman property has been zoned as R-60 (one family, detached). It lies at the southern corner of the intersection of Glenbrook Road (running N.E.-S.W.) and Old Georgetown Road (running N.W.-S.E.).

Along or near Old Georgetown Road and to the southwest of it lie several Blocks in Battery Park. To the northwest of Lots 1-3 in Block K and across Glenbrook Road, is Block J, containing 28 lots zoned R-60. South of Block J and roughly southwest of the subject property is Block A. This is separated from Block K by Exeter Road and from Block J by Glenbrook Road which join about 300 feet west of Old Georgetown Road. Block A contains 9 lots, all zoned R-60. Also south of Block K are Blocks 3A and 3B, containing 18 lots, also zoned R-60. To the southeast of Block K and across

Del Ray Avenue is Block L, containing 19 lots. Of these 15 are zoned R-60. The other 4 front on Old Georgetown Road. The first, at the corner of that road and Del Ray Avenue, was reclassified as C-O in 1958; the other three are zoned C-2 (General Commercial). All of Block K, with the exception of Lot 8 (which had been reclassified as C-O in 1958) was zoned R-60, at the time of the Council's action on the appellees' present application. All of Block K, except the Gendleman property and Lot 8 has been developed residentially, including the four lots—Nos. 4-7—fronting on Old Georgetown Road between the Gendleman tract and Lot 8. In general the other Blocks in Battery Park referred to above and zoned R-60 have been developed residentially and are so used. Some few of the houses are occupied by physicians who have offices in their homes, and there is also in the immediate vicinity the Battery Park Club, a community project located in what was a residence, which has tennis courts on its property.

Across Old Georgetown Road from the Gendleman property and generally to the east of it is the so called "Woodmont Triangle," a commercial area so zoned and long so used, which is bounded on the east by Wisconsin Avenue, on the northwest by Glenbrook Road, and on the southwest by Old Georgetown Road. The western point of the Woodmont Triangle is a lot zoned C-O, directly across Old Georgetown Road from the Gendleman property.

In January, 1954, the Gendlemans filed an application for rezoning of their tract from R-60 to C-O, which was denied. In January, 1956, they filed another, on which the Council conducted a public hearing in March; but the Council did not act on the application until after it had received the recommendation of the Maryland-National Capital Park and Planning Commission (Park and Planning), which is the planning agency for Montgomery County. On June 13, 1956, Park and Planning adopted a master plan for streets and highways in the Bethesda business district and vicinity which contemplated widening Old Georgetown Road and making it a dual highway and also contemplated widening Glenbrook Road by ten feet. On the same day Park and Planning adopted a zoning

plan for the Bethesda business district and vicinity. This contemplated extending C-O zoning along the southwest side of Old Georgetown Road from Del Ray Avenue to Glenbrook Road by rezoning Lots 1-8 in Block K. In accordance with these highway and zoning plans, Park and Planning recommended to the Council on June 27, 1956, that the Gendleman application be granted, except as to 3747 square feet to be reserved for street widening. The Council, however, declined to follow this recommendation and rejected the application on August 7, 1956. An appeal from the 1956 decision to the Circuit Court followed. Judge Anderson found that the action of the Council was not arbitrary, capricious, discriminatory and illegal, and, on the contrary, that its action was "fairly debatable." He accordingly dismissed the complaint or appeal on January 26, 1959.

He took note of the fact that after the Council's denial of the Gendleman application, the Council had granted an application for the rezoning of Lot 8 of Block K from R-60 to C-O and observed: "It may well be that should the plaintiffs renew their application for [the] requested change in zoning at this time their application would receive more favorable treatment."

On June 15, 1959, the present application was filed, a public hearing was held on September 21, 1959 and the application was denied on December 1, 1959, and a petition for reconsideration was also denied. The Gendlemans then appealed to the Circuit Court pursuant to Sec. 78A of Ch. 780 of the Acts of 1959 (now codified as Sec. 72-85 of the Montgomery County Code of 1960). On May 2, 1961, the Circuit Court reversed the Board and the Council appealed to this Court.

The trial judge rested his decision largely upon the inconsistent and hence discriminatory action of the Council in granting reclassification from R-60 to C-O of one lot in this block in 1958 and refusing such reclassification to another lot in the same block in 1959, "when both actions are based upon different reasons, while the record does not sustain any such stated reasons."

On October 14, 1958, the Council did reclassify Lot 8 from

R-60 to C-O. This lot is at the southeast corner of Block K and at the western corner of the intersection of Old Georgetown Road and Del Ray Avenue. On the same day the Council similarly rezoned the lot at the southern corner of this same intersection (that is, the lot directly across Del Ray Avenue from Lot 8). This completed the extension of commercial zoning (all the rest apparently being C-2) from Wisconsin Avenue along the southwesterly side of Old Georgetown Road to the northwest edge of Lot 8 of Block K. The Planning Commission's 1956 zoning plan, as noted above, contemplates extending C-O zoning farther along Old Georgetown Road to Glenbrook Road and would include the Gendleman property and the four intervening lots between it and Lot 8, as well as Lot 8. These four lots have an aggregate frontage on Old Georgetown Road of about 250 feet, and the Gendleman tract has a frontage of about 142 feet on it.

The nub of the problem here is the familiar one in many zoning cases—the effort to preserve lands in a residential area from erosion by a spreading or swelling commercial tide. And, as in many other such cases, the problem is where the line should be drawn and held. To a very large extent the solution of that problem is left to the legislative body exercising zoning powers, and that is true here. It has been held repeatedly by this court that "where the legislative body has rezoned or refused to rezone property, the court cannot substitute its judgment for that of the legislative body, if the question is fairly debatable, nor can the court substitute its judgment for that of the zoning authorities as to the wisdom of the action taken." This quotation happens to be from the case of *Montgomery County Council v. Scrimgeour*, 211 Md. 306, at 312, 127 A. 2d 528, but its equivalent is to be found in many others. We think that there is no dispute as to the rule. The trial judge recognized it, but thought the action of the Council arbitrary, capricious and discriminatory and hence illegal.

It is true that the Gendleman tract and Lot 8 are at opposite ends of the same block. It is also true that in the Lot 8 rezoning case the Council followed the recommendation and plan of Park and Planning and that in the instant case it did

not. The power to rezone or not to rezone lies with the Council, not with Park and Planning. Though the recommendations of the latter body are certainly entitled to weight, the Council is equally certainly not bound by them. The Council stated in its opinion that it disagreed with the findings of Park and Planning and pointed out that land to the west, south and east was then zoned R-60, that the site was vacant, and that other land in this block was occupied by residents, as were blocks to the west and north of the intersection of Old Georgetown Road and Glenbrook Road, with the exception of a church on the northwest corner. It seems to us that in its use of geographical terms the Council may have thought of Old Georgetown Road as running north and south, though the plats indicate that it runs almost exactly northwest and southeast. If we make this compass allowance, these statements of fact of the Council appear to us to be correct as to what it referred to as land to the west and south. It is true, as the trial judge pointed out, that land to the east, across Old Georgetown Road, is commercial, but the adjoining lots to the southeast (between the subject property and Lot 8) are still zoned as R-60. We are unable to agree with the learned trial judge's view which seems to have regarded the Park and Planning's recommendation that these be included in a C-O zone as if it were already effective, because he seems to have assumed that these lots were not already rezoned as C-O simply because no application for such rezoning had been made. We understand that there actually were residences on these lots at the time of the hearing before the Council.

The Council also stated that the 1956 zoning plan was a long range plan for development in this area and not necessarily recommended for immediate adoption. We find that rather unconvincing, particularly in view of the Council's concluding reason for denying the application—that to deny it "will aid in the accomplishment of a coordinated, comprehensive, adjusted and systematic development of the Maryland-Washington Regional District." We might also entertain some doubt, in the light of the rezoning of Lot 8, as to the correctness of the Council's view that to grant this application "would cause the first significant change in the Bat-

tery Park Subdivision," but we should not feel warranted in declaring it wrong. Also, we see no reason why we should question the Council's further statement coupled to the one just quoted to the effect that "Battery Park Subdivision is still a fine residential community." The Council further stated that since Judge Anderson's decision in 1959, there "has not been such a significant change in the neighborhood * * * [as] would justify rezoning of these lots." That is a view which is not lightly to be brushed aside under our standard of judicial review, even though it might, of course, be overcome by adequate proof.

Even if there were facts which would have justified the Council in rezoning the property, this would not of itself prove the denial of rezoning illegal. There is still the area of debatability, and one who attacks the refusal of rezoning must meet the heavy burden of proving that the action of the legislative body in refusing it was arbitrary, capricious or illegal.

We do not think that the rezoning of Lot 8 in 1958 was enough to meet this test as applied to the denial of rezoning of the appellees' tract in 1959. Zoning and rezoning do require the drawing of lines, and the legislative body may draw them subject to the same limitations as are applicable to other phases of the zoning process. *Board of County Com'rs of Prince George's County v. Walcroft,* 224 Md. 610, 168 A. 2d 892. In view of the continuing predominantly residential character of the immediate neighborhood in which the appellees' property is located, we cannot say that, in our estimation, the action of the Council in refusing to rezone it for commercial-office use was beyond the field in which its action was fairly debatable. It therefore was not bound to extend that classification beyond the lot at which it had elected to stop. The nearness of C-O zoned property, Lot 8, is not of itself enough to require such extension, *Conley v. Montgomery County,* 216 Md. 379, 140 A. 2d 525; nor does its refusal prove unlawful discrimination. See *Montgomery County Council v. Scrimgeour, supra,* which we think is controlling on this last mentioned phase of the case.

In reaching our conclusion we have not overlooked the appellees' contention that the present zoning deprives them

of any reasonable use of their property. In support of this contention they cite *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482, and similar cases establishing this rule. Their contention here seems, however, to be based largely on their claim that the most profitable or highest and best use of the land is for an office building. Assuming this is its highest and best use (though Lot 8 does not appear to have sold for such a purpose with any rapidity after it was rezoned C-O, as it was posted for sale over a year later), that alone is not enough to sustain the contention. See such cases as *Walker v. Board of County Com'rs of Talbot County,* 208 Md. 72, 116 A. 2d 393; *Montgomery County Council v. Scrimgeour, supra; Marino v. City of Baltimore,* 215 Md. 206, 137 A. 2d 198; *Conley v. Montgomery County, supra.* The only grounds strenuously urged in the appellees' brief to show that the property in question is not practically usable for residential purposes are heavy and greatly increased traffic on Old Georgetown Road, as shown by the traffic counts, and the prospective dualization of that road. We think they have failed to meet the burden of proof by this evidence.

In accordance with the above views, we think that the decree must be reversed.

*Decree reversed, with costs.*