# MONTGOMERY COUNTY COUNCIL *v.* SHIENTAL, ET UX.

[No. 136, September Term, 1967.]

*Decided March 6, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, McWILLIAMS, FINAN and SINGLEY,.
JJ.

*H. Christopher Malone, Assistant Attorney General,* with:
whom was *David L. Cahoon, County Attorney,* on the brief,.
for appellant.

*C. Edward Nicholson,* with whom was *James R. Trimm* on:
the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

In this Montgomery County zoning case, the County Coun-
cil sitting as the District Council denied the application of Sol
and Rose Shiental for a reclassification of a tract of land from,
rural residential to light industrial. The Circuit Court (Pugh,
J.) reversed the decision of the County Council and it appealed:
to this Court. The question here is (a) whether the refusal of
the zoning authority to reclassify the property was supported.

by legally sufficient evidence and (b) whether the decision was arbitrary or capricious.

The property in question, containing approximately 67 acres, is located in Bucklodge, near Boyds, at the intersection of the Barnesville Road, Slidell Road and Maryland Route 117. Topographically, the property is rolling pasture land with a few single family dwellings and is zoned R-R (rural-residential). The contour and development of the surrounding properties are similar in that they are likewise zoned R-R except for a 78-acre tract zoned I-1 (light-industrial) to the northwest separated from the subject property by Route 117 and a 55-acre tract also zoned I-1 to the southwest separated from the subject property by the right of way of the Baltimore & Ohio Railroad. The only residential development in the area is along Route 117 and the Barnesville Road.

The technical staff of the Maryland-National Capital Park and Planning Commission recommended denial of the application concerning this tract (No. E-539) as well as the application concerning a nearby tract (No. E-544) not involved in this appeal. The staff report concluded—

> "In this immediate area 133 acres of land, more or less, are presently zoned I-1 and none of it is used. The granting of these two applications would provide over 220 [1] acres of unused industrial land at this one location. While the staff believes that this general location is a good one for industrial uses, additional zoning at this time would be superfluous. Over-zoning, as pointed out in the General Plan, leads to raising false expectations by artificially inflating land values to a point which inhibits development of the land. The staff is of the opinion that this is what could occur if these properties were rezoned. Based upon the lack of a change in character and the prematureness of these requests, the staff recommends denial of both applications."

---

[1]. Apparently this is a typographical error: the record extract indicates it should be "200 acres."

The County Planning Board of the Maryland-National Capital Park and Planning Commission disagreed with the technical staff and recommended approval stating that the "subject properties * * * are located in a logical area for industrial zoning and for this reason approval of the applications can be justified."

At the hearing before the County Council sitting as the District Council, the Shientals relied on the industrial reclassifications which were granted in 1958 and 1963 but which have never been developed to such use [2] as showing substantial change in the area. They also relied on the testimony of their attorney and a real estate broker to the effect that a railroad right of way was conducive to industrial and not residential development.

In contrast several residents and property owners in the area testified in opposition to the proposed rezoning that reclassification would create congested traffic conditions; that the subject property is a beautiful recreational area that would be harmed by industrial use; that the area lacked sewerage and water facilities; that industrial waste would pollute the local creeks; that there had been no development of the industrially zoned land already in the area and that residential development was continuing.

---

2. Prior to 1958 a tract of approximately 35 acres abutting the north line of the railroad and the west line of Route 117 and surrounded by land zoned rural-residential was zoned light industrial. In 1958, under zoning application No. C-68, and in 1963, under zoning application No. C-973, the district council granted reclassification of 43 acres and 55 acres, respectively, from rural-residential to light industrial. As to the first tract, along Route 117, the technical staff having found that a limited amount of industrial development could be accommodated in the area, recommended rezoning to I-1 and the report was approved by the planning board. As to the second tract, along the railroad right of way, the district council stated that it agreed "with the recommendation to begin now to establish a reserve of industrially zoned land"; "that [r]eclassification of the subject property to I-1 zone would be a reasonable and logical extension of existing I-1 zone"; and that "[i]t is topographically the ideal classification to give this particular site."

The County Council sitting as the District Council, relying on the staff report, denied rezoning. It found:

"The subject property is rolling pasture land which is surrounded by R-R zoned property except for a tract of I-1 property to the southwest, separated from the subject property by the B and O Railroad right of way, and a tract to the northwest, separated from the subject property by Maryland Route 117. These tracts have been undeveloped and unused since their classification in 1958 and 1963 respectively, clearly showing that the present industrial property is more than ample and that there is no need for any additional industrial land. Any additional industrial zoning would be detrimental to the development and use of adjacent residential and recreational areas. Therefore, reclassification of the subject property is unwarranted and unneeded as there has been no substantial change in the character of the neighborhood."

On the appeal to the Circuit Court for Montgomery County, Judge Pugh stated in his initial opinion and order that the District Council had been arbitrary in refusng to grant the requested rezoning because there had been a substantial change in the character of the neighborhood in that all of the surrounding land had been classified I-1, that the subject property was bordered on one side by the railroad track and that the planning board had recommended the rezoning. In his supplemental opinion, besides reiterating his position that the two prior rezonings constituted a substantial change, he found that there was insufficient evidence to support the conclusion of the Council that additional industrial zoning would inhibit the development of the adjacent residential areas; that several citizens appearing in opposition would have had "a heavy burden proving aggrievement"; that no expert testimony was presented by the opponents to the rezoning; that even the technical staff stated that the location was a good one for industrial uses but recommended denial for economic reasons which had no legal basis.

We think that the refusal of the zoning authority to reclassify the subject property was supported by legally sufficient evi-

dence and for that reason its decision was not arbitrary or capricious. Courts may not substitute their judgment for that of the expertise of the zoning authority. *Board of Co. Com. of Prince George's County v. Farr,* 242 Md. 315, 218 A. 2d 923 (1966); *Bosley v. Hospital for Consumptives,* 246 Md. 197, 227 A. 2d 746 (1967). The test where the zoning authority has declined to rezone is whether there was legally sufficient evidence to support the decision of the authority, *i.e.,* was it "fairly debatable." *M. & C. C. of Greenbelt v. Board of Co. Com. of Prince George's County,* 247 Md. 670, 234 A. 2d 140 (1967). And the one who attacks a denial of rezoning must show that the refusal was arbitrary or capricious. *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967). This the Shientals did not do.

The lower court had no power to rezone. *Board of Co. Com. of Prince George's County v. Farr, supra.* And since it was evident that the previous industrial reclassifications had remained undeveloped and there was no evidence that future use for that purpose was even contemplated, the zoning authority was justified in considering these facts as the reason for finding that there was no present need for more industrially zoned land. While the earlier rezonings could have constituted such changes as would permit a reclassification of the subject property, they did not compel it. Furthermore, since zoning and rezoning necessarily require the drawing of lines somewhere and the zoning authority, subject to the same limitations as are applicable to other phases of the zoning process, has a right to draw reasonable dividing lines, the council was not required to extend industrial zoning in this case beyond the existing industrial areas. *County Council for Montgomery County v. Gendleman,* 227 Md. 491, 177 A. 2d 687 (1962).

Aside from this, the technical staff, having recommended denial of additional rezoning, its reasoned report constituted probative evidence for the denial of the application for reclassification and was sufficient to make the issue fairly debatable. *Board of Co. Com. of Howard County v. Turf Valley Associates,* 247 Md. 556, 233 A. 2d 753 (1967); *Sampson Bros. v. Board of Co. Com. of Prince George's County,* 240 Md. 116,

213 A. 2d 289 (1965) ; *Board of Co. Com. of Prince George's County v. Meltzer,* 239 Md. 144, 210 A. 2d 505 (1965).

We hold that the order of the zoning authority should have been affirmed.

> *Order of circuit court reversed and order of zoning authority reinstated; appellees to pay the costs.*