# MONTGOMERY COUNTY COUNCIL *v.*
# PLEASANTS ET AL.

[No. 23, September Term, 1972.]

*Decided October 11, 1972.*

*Motion for rehearing filed November 10, 1972; denied November 13, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Adam J. Wojciak, Jr., Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney,* and *Martin J. Hutt, Assistant County Attorney,* on the brief, for appellant.

*Hal I. Lackey,* with whom was *Garland E. Lowe* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Mr. Pleasants and his father (the Owners) having failed to persuade the Maryland-National Capital Park and Planning Commission's technical staff, the Montgomery County Planning Board and the Montgomery County Council, sitting as the District Council (the Council), that the Owners' application for the reclassification of a 2.32 acre tract near Clarksburg from R-R (rural residential) to C-2 (general commercial) was meritorious, appealed to the Circuit Court for Montgomery County. That court concluded that the Council's denial of the requested reclassification was arbitrary and capricious, vacated the order of the County Council and granted the reclassification. From this order the Council has appealed.

The tract which is the subject of the controversy lies generally in the northwest quadrant of the intersection of Maryland Routes 355 and 121 and had been classified R-R in the comprehensive rezoning of 1958. Thereafter, properties immediately to the north, east and southeast of the Owners' tract had been rezoned C-2, the last reclassification having taken place in 1969.

The Owners, positing their case on a change in the character of the neighborhood, sought rezoning in order

to use the tract as an office for their contracting business, and for the storage of earth moving equipment. The hearing examiner found that there had been sufficient change to justify rezoning, but that rezoning was not compelled, citing *Hardesty v. Dunphy*, 259 Md. 718, 725, 271 A. 2d 152 (1970).

The hearing examiner also noted that although C-2 zoning had been recommended for the Owners' tract by the 1968 Clarksburg Master Plan, public water and sewer facilities were not available, nor had they been projected in the county's ten year water and sewer program and that, for this reason, both the technical staff and the planning board had recommended denial of the application. Although he recognized that the proposed use of the property might involve no greater demand for water and sewer facilities than would residential use, he found lack of such facilities would hardly be compatible with the various other uses permitted in a C-2 zone. Consequently, he recommended denial of the reclassification. The Council adopted the report and recommendation of the hearing examiner, and rejected the application as premature, because of the lack of water and sewer facilities.

What troubled the lower court was that five nearby properties had been reclassified from R-R to C-2:

(i) In June 1965, 37,948 square feet diagonally across Route 355 from the Owners' tract (now improved by a branch bank);

(ii) In July 1965, 10.5 acres, adjacent to the Owners' tract at the rear;

(iii) In July 1965, 1.4 acres in the same quadrant as is the Owners' tract;

(iv) In September 1965, a triangular tract containing 14,360 square feet, at the northwest corner of Routes 355 and 121;

(v) In April 1969, 1.60 acres adjacent to the Owners' tract on the east side.

In granting the two most recent reclassifications, the

Council had talked of "rounding out" the commercial quadrant recommended by the Clarksburg Master Plan, had rejected any contention of prematurity, and had referred to the changes which had resulted from the 1965 rezonings. It was the Council's abrupt change of course which the lower court regarded as arbitrary and capricious.

The ground rules governing the disposition of this sort of case have been laid out time and again. A court may not substitute its judgment for that of the zoning authority if the issue is fairly debatable, *Bosley v. Hospital for Consumptives*, 246 Md. 197, 204, 227 A. 2d 746 (1967) ; *Board of County Comm'rs v. Farr*, 242 Md. 315, 322, 218 A. 2d 923 (1966) ; *Montgomery County v. Merlands Club*, 202 Md. 279, 292, 96 A. 2d 261 (1953). An adverse report of the planning board or of the technical staff, supported by sufficient facts and reasons, of itself, is enough to raise a fairly debatable issue, *Yewell v. Board of County Comm'rs*, 260 Md. 42, 49, 271 A. 2d 360 (1970) ; *Montgomery County Council v. Shiental*, 249 Md. 194, 199, 238 A. 2d 912 (1968), and cases there cited. Change in the character of a neighborhood may justify a reclassification, but does not compel it, *Chapman v. Montgomery County*, 259 Md. 641, 647, 271 A. 2d 156 (1970) ; *Furnace Branch Land Co. v. Board of County Comm'rs*, 232 Md. 536, 539, 194 A. 2d 640 (1963) ; *County Council v. Gendleman*, 227 Md. 491, 498, 177 A. 2d 687 (1962). While a mere change of mind or heart by the zoning authority, assuming an identical set of facts, may amount to arbitrariness or capriciousness, *Polinger v. Briefs*, 244 Md. 538, 541, 224 A. 2d 460 (1966) ; *The Chatham Corp. v. Beltram*, 243 Md. 138, 150, 152, 220 A. 2d 589 (1966), a different result may well be called for by a change in circumstances, or by the cumulative effect of prior reclassifications bearing a substantial relation to the public welfare. *See Wier v. Witney Land Co.*, 257 Md. 600, 616, 618, 263 A. 2d 833 (1970) ; *Messenger v. Board of County Comm'rs*, 259 Md. 693, 702, 271 A. 2d 166 (1970) ; *Montgomery County Council v.*

*Shiental, supra,* 249 Md. at 197, 199; *cf. Whittle v. Board of Zoning Appeals,* 211 Md. 36, 45, 125 A. 2d 41 (1957); 168 A.L.R. 13, 42 (1947). The fact that adjacent property may have been rezoned does not require the rezoning of the property under consideration, *Plant v. Board of County Comm'rs,* 262 Md. 120, 125, 277 A. 2d 77 (1971); *Messenger v. Board of County Comm'rs, supra,* 259 Md. at 703, 704; *Baker v. Montgomery County,* 241 Md. 178, 185, 186, 215 A. 2d 831 (1966); *County Council v. Gendleman, supra,* 227 Md. at 498.

We do not regard *Aspen Hill Venture v. Montgomery County,* 265 Md. 303, 289 A. 2d 303 (1972), relied on by the Owners, as apposite. In *Aspen Hill,* the District Council, 60 days *after* it had denied the appellant's request for C-1 zoning, basing its denial on lack of need, granted C-1 zoning for a tract some 1,500 feet distant. This action we held to be arbitrary and discriminatory. The case before us presents a totally different situation. There is no denying the fact that the Council had rezoned five tracts in the northwest quadrant of the intersection without considering the water and sewer problem as controlling. When the Owners' turn came, the absence of water and sewer facilities was considered, and the application was rejected as premature.

Additionally, the hearing examiner and the District Council had before them the September 1968 Master Plan—Clarksburg and Vicinity. Three excerpts are of particular significance:

> "Only about a third of the Planning Area has soils suitable for septic tank use. . . . The unsuitable soils are concentrated around the intersection of Routes 355 and 121. . . ." (at page 5)

\* \* \*

> "The inability of the soil in some sections to adequately percolate will prevent large-scale development with septic tanks. . . ." (at page 15)

\* \* \*

". . . The use of wells and septic tanks is becoming increasingly unsatisfactory as population density increases; because the area's rocky geologic structure and impermeable soil encourage the mixture of septic tank effluent with well water and could, eventually, create a major health problem." (at page 16)

This alone would support the finding that a granting of the application would not be in the public interest. It appears that only the April 1969 reclassification of 1.60 acres was granted subsequent to the release of the Master Plan.

Zoning inevitably involves the drawing of lines, *Messenger v. Board of County Comm'rs, supra,* 259 Md. at 703, and the Council was not bound to extend a commercial classification beyond the lot where it elected to stop, *County Council v. Gendleman, supra,* 227 Md. at 498. It may well be that the Council was motivated by the fact that the availability of water and sewer facilities, which was believed to be at least six years distant when the reclassifications were granted in 1965, was thought to be at least 10 years away when the Owners' application was considered by the Council in 1971. Additionally, the Council may have regarded as significant that of the five properties which had been classified C-2, only two were being so used, *see Messenger v. Board of County Comm'rs, supra,* 259 Md. at 702. In any event, the issue was fairly debatable, and we fail to see how the Council's action could be regarded as arbitrary or capricious.

*Order reversed, costs on appeal and below to be paid by appellees.*